LEROY BURTON et al., Plaintiffs-Appellants, v. DRAKE'S MAYORS ROW RESTAURANT, INC., Defendant.—(ARTHUR N. LANSKI et al., Defendants-Appellees.)

First District (3rd Division)   No. 76-692

Opinion filed October 5, 1977.

Heller & Morris and Jerome H. Torshen, Ltd., both of Chicago (Jerome H. Torshen and Edward G. Wierzbicki, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (Robert A. Knuti, Richard E. Mueller, and Hugh C. Griffin, of counsel), for appellees.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The plaintiffs seek recovery under the Dramshop Act (Ill. Rev. Stat. 1971, ch. 43, par. 135) for personal injuries they suffered when a parked vehicle in which they were sitting was struck by a car driven by Leonard DeJohn. The action is against the owners of the premises in which Mayors Row Restaurant in Chicago is located. Plaintiffs claim DeJohn was sold or given intoxicating liquors in those premises prior to the accident.

Although named as a defendant, DeJohn was never served, and he was not present at the trial which was held before a jury. The sheriff's return indicated an unsuccessful attempt to serve DeJohn on December 29, 1972, and contained a notation that he had moved together with a comment indicating the deputy sheriff had spoken to DeJohn's mother. During the trial, the plaintiffs voluntarily dismissed DeJohn from the action.

The only evidence plaintiffs offered to connect DeJohn with drinking at Mayors Row Restaurant was a statement he gave a week after the accident to Raymond Hickey, an investigator plaintiffs employed. Included in DeJohn's statement to Hickey were the following answers to questions Hickey propounded: The accident occurred when he was driving and lost control of his car and hit the parked car. He did not work the day before the accident, which to his best recollection occurred about a quarter of 2 a.m. Prior to the accident, he was in Mayors Row in Chicago where he stopped for a drink with some people for about an hour. He was drinking beer in Mayors Row and had two draft beers. He was not in any other taverns anywhere that night.

These statements were excluded by the trial judge, and without them plaintiffs had no evidence that DeJohn had been at Mayors Row prior to

the accident. Accordingly, the circuit court directed a verdict in favor of defendants at the close of plaintiffs' case. Plaintiffs contend the circuit court erred in excluding DeJohn's statement to Hickey because it was a declaration against interest and DeJohn was unavailable at the time of the trial.

■■ A recognized exception to the hearsay rule is the admission of a declaration against interest, but a prerequisite for admitting such a declaration is that the declarant be unavailable to testify at the trial. (*Naylor v. Gronkowski* (1972), 9 Ill. App. 3d 302, 306, 292 N.E.2d 227; Fed. R. Evid. 804.) The first question we shall consider and which, in view of our conclusion, is dispositive of the appeal, is whether DeJohn was unavailable at the time of trial.

■■ The burden of showing the unavailability of the declarant belongs to the party seeking to introduce the declaration. (*United States v. Amaya* (5th Cir. 1976), 533 F.2d 188, 191; *Devine v. Chicago City Ry. Co.* (1913), 182 Ill. App. 366, 368.) In *Swearinger v. Klinger* (1968), 91 Ill. App. 2d 251, 255, 234 N.E.2d 60, the court observed that a declarant was not unavailable in a legal sense even if he was not in court during the trial, in the absence of a showing that the party seeking to use a declaration against interest made an effort to secure and present the declarant's testimony. Helpful precedents in ascertaining the type of showing of unavailability that must be made are found in cases which deal with another recognized exception to the hearsay rule, the exception involving the use of a witness' testimony at an earlier trial when the witness is unavailable during a subsequent trial, as well as in decisions which involve the question of whether a deposition may be used because a party has been unable to procure the attendance of a witness by subpoena, as provided by Illinois Supreme Court Rule 212(b)(3). Cases dealing with those questions require a showing of due diligence, reasonable diligence, and a good faith effort to locate the missing witness and secure his presence in court. *People v. Holman* (1924), 313 Ill. 33, 36, 144 N.E. 313; *People v. Payne* (1975), 30 Ill. App. 3d 624, 628, 332 N.E.2d 745; *People v. Burton* (1972), 6 Ill. App. 3d 879, 885, 286 N.E.2d 792; *John v. Tribune Co.* (1961), 28 Ill. App. 2d 300, 318, 171 N.E.2d 432, *rev'd on other grounds*, (1962), 24 Ill. 2d 437, 181 N.E.2d 105.

Hickey testified that he took DeJohn's statement in DeJohn's home in Franklin Park on December 31, 1971, a week after the accident occurred, in the presence of a court reporter and DeJohn's mother. He made no effort to locate DeJohn or to learn of his whereabouts from the time he took the statement (December 31, 1971) until January 21, 1976, which was approximately 2 weeks prior to the commencement of trial. On that and one or two following days he spent 6 to 7 hours trying to find DeJohn. He went to DeJohn's last-known address and ascertained from his two

immediate neighbors that he had moved without leaving a forwarding address. He also contacted the post office in Franklin Park and discovered DeJohn had not left a forwarding address. He then sent a certified letter to DeJohn's last-known address, and it was returned. In addition, he checked with the Chicago Information Corporation, a credit bureau. These efforts failed to produce any indication as to DeJohn's whereabouts.

The mailing of three letters to the last-known address of a missing witness within 3 months of trial, requesting that he appear at the trial, when none of which letters were answered by the witness, was held insufficient in *Holman* to satisfy due diligence. In *Burton*, where the court concluded the State showed a good faith effort to locate missing witnesses, a police investigator did everything Hickey did in this case, except that he did not mail a letter to the last address of the persons sought or check with a credit bureau. However, the investigator in *Burton* also contacted representatives of the Post Office; in addition, he consulted the election commission, examined telephone directories and conducted a search in the general community where the missing persons lived, none of which Hickey appears to have done here. Hickey's efforts were not more extensive than those of the police investigator in *Payne*, where the court held the record failed to disclose reasonable diligence. In *John v. Tribune Co.*, a party attempted to introduce in evidence a deposition of a person not present at trial. The showing made was that the party had unsuccessfully attempted to serve a subpoena on the missing deponent the day before trial at an address at which she had previously been arrested, and one of the attorneys for the party seeking to introduce the deposition testified he had been told by lawyers who once represented the missing witness that she had moved to another State. After noting that the evidence of the conversation with the deponent's former attorneys was hearsay, the reviewing court held that the investigation to locate the missing witness was "purely perfunctory." *Devine* held that an effort to serve a subpoena the day before trial on a witness who had left the State was not reasonable diligence justifying use of testimony at a previous trial, when there had been ample opportunity to take the person's deposition.

Here, the search made for DeJohn was entirely too casual and informal to satisfy the burden plaintiffs had of showing reasonable diligence. It was deficient in at least the following respects. There was no showing of an effort to locate DeJohn's mother, who was present when he gave his statement to Hickey and when the deputy sheriff attempted to serve summons on DeJohn, and might have contributed information leading to DeJohn. There was no effort to find DeJohn through telephone directories or voting registration records. The police report of the accident giving

rise to this case contained DeJohn's driver's license number, but no effort was made to determine the current status of the information on his driver's license through the Secretary of State. See Ill. Rev. Stat. 1975, ch. 95½, par. 6—118(d).

Plaintiffs' delay in locating DeJohn also evidences lack of due diligence. Hickey took his statement on December 31, 1971, and there was no effort to check on his availability between that date and January 21, 1976. This delay was unreasonable particularly in view of the difficulty in serving summons on DeJohn in December 1972, a year after the accident, and in view of the message the sheriff's deputy carried back that DeJohn had moved. This should have alerted the plaintiffs to commence looking for him immediately if they wanted him as a witness, instead of waiting more than 3 years after the unsuccessful service before starting to look for him. Instead of beginning their search when the sheriff returned, the plaintiffs waited until only 2 weeks before the trial began. Though this was not quite as close to the eve of trial as was the effort in *Tribune* and *Devine*, where the parties waited until the day before trial to start their searches, it still was not a good faith effort, given the 3-year time lapse between the attempt to serve summons and the trial. Further, the plaintiffs made no effort to discover where DeJohn was working, and to locate him through his job. Also, they made no showing that the two neighbors Hickey spoke to knew DeJohn when he was living at the address where Hickey was looking for him. Hickey's desultory effort almost seems to indicate that the plaintiffs were satisfied not to have DeJohn at the trial, a position which is quite understandable in view of the ambiguous nature of his statement.

On the basis of the record before us, this court cannot be reasonably satisfied that DeJohn could not be found. Plaintiffs rely on *Frazier v. Burks* (1968), 95 Ill. App. 2d 51, 53, 238 N.E.2d 78, where a declarant was found to be unavailable. That opinion does not tell us what efforts must be shown to satisfy the requirements of reasonable diligence because it does not set forth what was done to locate the missing declarant. The court merely observed that a witness testified in detail as to his unsuccessful attempt to serve a subpoena.

■■ Because, then, there was no adequate showing of DeJohn's unavailability as a witness, his testimony properly was excluded by the trial judge and it is unnecessary for us to consider whether DeJohn's statement satisfied other requirements of a declaration against interest or the other issues plaintiffs raise in this appeal.

Judgment affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.