PAUL KLEEMAN, Plaintiff, *v.* FRAGMAN CONSTRUCTION CO. *et al.*, Defendants and Third-Party Plaintiffs-Appellees.—(L. J. COLUMBE & SON CONSTRUCTION COMPANY, INC., Third-Party Defendant-Appellant.)

First District (5th Division) No. 79-1134

Opinion filed November 21, 1980.—Rehearing denied January 23, 1981.

Braun, Lynch, Smith & Strobel, Ltd., of Chicago (John J. Treacy, of counsel), for appellant.

Sweeney & Riman, Ltd., of Chicago (Francis J. Marasa, Marvin Riman, and Joan Engeman, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Third-party defendant, L. J. Columbe & Son Construction Co., Inc. (Columbe), appeals from the trial court's judgment which granted a directed verdict in favor of third-party plaintiffs, Fragman Construction Co. (Fragman), Childrens Bargain Town USA, Inc. (Bargain Town), and Toys "R" Us. This action arises out of a claim for indemnity by third-party plaintiffs, the general contractor and owners of a building under construction, against third-party defendant, a subcontractor and the employer of the original plaintiff (Kleeman), with whom said third-party plaintiffs effected a settlement of his claim for damages under the Structural Work Act. Ill. Rev. Stat. 1971, ch. 48, par. 60 *et seq.*

The following issues are raised for our review: (1) whether the judgment entered by the trial court prior to the directed verdict which permitted plaintiff to settle his action against the owners and general contractor adequately protected the lien of the employer; (2) whether the trial court erred in allowing judgment by way of indemnity for the owners and general contractor against the employer in an amount equal to the cash settlement to plaintiff plus the amount recovered by plaintiff from his workmen's compensation benefits; (3) whether the trial court erred in ruling on certain evidentiary objections; and (4) whether the trial court erred in granting a directed verdict in favor of third-party plaintiffs.

On November 10, 1972, plaintiff sustained injuries when he fell while installing shelving during the construction of a store in Burbank, Illinois. Plaintiff brought an action under the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, pars. 60-69) against the owners and general contractor. Both the owners and general contractor then filed third-party actions for indemnity against Columbe, plaintiff's employer. On January 9, 1979, the owners and general contractor petitioned the court for a consent judgment between themselves and plaintiff, agreeing to compensate plaintiff in the sum of $40,000 in exchange for a dismissal of his action against them with prejudice. Third-party plaintiffs further agreed by this petition to pay, upon application of Columbe, the lien amount owing to Central Mutual Insurance Co., Columbe's compensation carrier. Plaintiff was held harmless by third-party plaintiffs from any actions to collect this lien amount. The order of the trial court entered on the same day approved the terms of the petition. In conforming with the agreement, it provided that upon application of Columbe for the use of its compensation carrier, "said party shall be compensated in accordance with the applicable statute [Ill. Rev. Stat. 1971, ch. 48, par. 138.5]."

The case then proceeded to trial on the indemnity action of the owners and general contractor against the employer. There is little dispute as to the trial testimony adduced from the four witnesses called by third-party plaintiffs or from the one witness called by third-party defendant.

Plaintiff testified that on November 10, 1972, he was employed as a carpenter for Columbe and was installing shelving at a height of 12 to 13 feet around the inside perimeter of the owner's building. He was kneeling on a section of the shelving, attempting to "level it out," when the shelving gave way, causing him to fall to the ground. Temporary 2 x 4 supports or T-Braces called "kickers" were being used at this time to brace the outer edge of the shelving from the floor.

Robert Drapak, an apprentice carpenter working with plaintiff, saw plaintiff kneeling on the outer edge of the shelf when it depressed, expelling plaintiff to the floor. Drapak later stated that the plywood upon which plaintiff was working gave way because the T-Brace supporting it was out of place.

Alex Wyroski was the construction superintendent for Fragman on the jobsite and was responsible for ensuring that the various subcontractors performed their jobs according to specifications. Although he was at the site on November 10, 1972, he did not witness the incident.

Edward Stevenson, employed as a supervisor in charge of the safety inspection division of the Illinois Department of Labor from 1965 to 1974, testified that Columbe's construction practices at the jobsite were in violation of safety standards in two respects. First, there were no perimeter guards or safety rails erected on the shelving being used as a temporary scaffold. Second, a rolling scaffold should have been furnished as a means of performing the work in question.

Wyroski was called for adverse examination by third-party defendant pursuant to section 60 of the Illinois Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 60.) He was the only employee of Fragman on the job with the exception of a laborer named Carter who did cleanup work. Wyroski was Fragman's construction superintendent and not a safety man.

Third-party defendant initially contends that the trial court's judgment order which permitted plaintiff to settle his action against third-party plaintiffs inadequately protected its lien for compensation benefits.

In Illinois, an employer has a right to recover reimbursement of compensation payments from the proceeds of an action filed by the employee against a third party by virtue of the Workmen's Compensation Act (the Act). (Ill. Rev. Stat. 1971, ch. 48, par. 138.5.) Section 5(b) of the Act provides in part:

"* * * if the action against such other person is brought by the

injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee * * *." (Ill. Rev. Stat. 1971, ch. 48, par. 138.5.)

Subparagraph (b) of section 5 further describes the employer's entitlement to a lien on the proceeds secured by the employee against the third parties:

"If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party." (Ill. Rev. Stat. 1971, ch. 48, par. 138.5(b).)

To insure that the employer's lien is protected, certain safeguards are provided by the Act:

"* * * No release or settlement of claim for damages by reason of such injury or death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both employer and employee or his personal representative, except in the case of the employers, *such consent is not required where the employer has been fully indemnified or protected by Court order.*" (Emphasis added.) Ill. Rev. Stat. 1971, ch. 48, par. 138.5(b).

Third-party defendant asserts that its lien interest was inadequately protected by the court's order. The relevant provision in the order stated that, "on application of L. J. Columbe & Son Construction Co., Inc., for the use and benefit of Central Mutual Insurance Co., the intervening petitioner, said party shall be compensated in accordance with the applicable statute." In its brief, third-party plaintiff argues that this provision is "no more than a formal gesture in acknowledgment of the rights of the employer which were in fact and in substance being wholly defeated by the court's implementation of the settlement without the consent of the employer." We disagree.

We find that the trial court's order afforded Columbe the protection contemplated by statute. As to Columbe's initial assertion that the settlement was reached without his consent, we note that counsel for Columbe was present when the terms of the disputed order were being negotiated. The agreement was not the product of a clandestine meeting between the court and counsel for third-party plaintiffs. Notwithstanding, a plain reading of the above-cited statute reveals that such consent is not

required "where the employer has been fully indemnified or protected by court order." The order in question approved the third-party plaintiffs' petition, which clearly acknowledges third-party defendant's lien and stated that the former would pay the amount upon the latter's application. This lien, later determined to be $15,430.45, was set off against third-party plaintiffs' award of $55,430.45 rendered by way of the directed verdict in the indemnity action. Thus, third-party defendant actually received credit for the lien amount as provided for by the court's order.

In *Galvan v. John Caretti Co.* (1972), 6 Ill. App. 3d 894, 287 N.E.2d 90, an order similar to the one in the instant case was found to adequately protect the lien of the employer. There, the trial court's order entered prior to trial stated, "that no judgment or compromise settlement shall be made by or on behalf of Caretti [the defendant] without allowance for the protection of the rights and interests of Inland [the employer]." (6 Ill. App. 3d 894, 896, 287 N.E.2d 90, 91.) Inland had not given written consent to the satisfaction of judgment. The jury returned a verdict in plaintiff's favor. Later, the trial court granted Inland an award or credit in the nature of a set-off or prepayment on the award from the compensation benefits. ■■ The order in the present case, like the one in *Galvan*, adequately protected the employer's lien. Consequently, it was not required that Columbe and its compensation carrier consent to both the settlement and judgment rendered thereon.

Third-party defendant also contends that the trial court's order following the indemnity action was erroneous because it awarded to the owners and general contractor an amount equal to the cash settlement to plaintiff plus the amount recovered by plaintiff through his workmen's compensation benefits. In essence, third-party defendant argues that the award is excessive because it allegedly allows third-party plaintiffs to recover from it an amount greater than the sum paid in settlement of plaintiff's action and does not allow it to recoup the compensation benefits paid to plaintiff. This contention is without merit.

When the consent judgment order is read in conjunction with the trial court's order entered pursuant to the directed verdict, it becomes apparent that the parties were justly compensated. The petition for consent judgment provided for a cash settlement to plaintiff for $40,000, and also indemnified plaintiff for the $15,430.45 lien owing to third-party defendant. In effect, third-party plaintiffs' exposure to third-party defendant should the latter have prevailed in the indemnity action was $55,430.45. Although the settlement agreement delineated the figures in the fashion set forth above, it had the effect of making a cash settlement to plaintiff for $55,430.45. Following the directed verdict, the court awarded $55,430.45 to third-party plaintiffs less the $15,430.45 lien,

resulting in a net award of $40,000. Therefore, the owners and general contractor were awarded an amount equal to that which they had agreed to pay plaintiff ($55,430.45), a sum found by the court to be fair and adequate compensation for plaintiff's injuries. Likewise, plaintiff's employer was required to pay that amount less the value of the compensation benefits it had expended. Accordingly, the trial court's order was not excessive.

Third-party defendant's next contention is that the trial court erred in making various evidentiary rulings during the indemnity trial.

The first error allegedly occurred during the cross-examination of Edward Stevenson. Third-party defendant asserts that the trial court sustained a series of "specious and groundless objections" by opposing counsel which "served to lead and direct the witness in forming his ultimate answers."

■■ Our review of this testimony shows that the trial court properly ruled on the objections to questions propounded to Stevenson. These questions basically involved references to a hypothetical question that was asked the witness on direct examination concerning whether perimeter guarding would have prevented plaintiff's injuries. During this questioning, counsel for Columbe repeatedly referred to the shelf upon which plaintiff was working as having "collapsed" at the time of the accident. The trial court sustained the objection to this reference on the grounds that it assumed facts not in evidence, since earlier testimony by Drapak, the sole eyewitness, established only that the shelf "depressed" and sprang back into place after plaintiff had fallen. Because there was, indeed, no testimony that the shelf "collapsed," the objection to the question was properly sustained.

Another instance of error allegedly occurred during the adverse examination of Alex Wyroski. Counsel for Columbe attempted to introduce into evidence through this witness a provision in the contract between the owners and general contractor which stated the following:

> "The Contractor shall be responsible to the Owner for the acts and omissions of all his employees and all Subcontractors, their agents and employees, and all other persons performing any of the Work under a contract with the Contractor."

The trial court sustained the objections to this effort on relevancy grounds. Third-party defendant argues that this ruling was erroneous since the provisions related to the responsibilities of the parties for the work. We note that the provision deals with the rights and duties between the owners and general contractor, the third-party plaintiffs in the present action, and does not concern their authority over the work performed by Columbe's employees. As such this provision only relates to how the

owners and general contractor would apportion possible technical liability under the Structural Work Act for the transgressions of the subcontractors, and not to the actual authority of the parties to control any portions of the work on the construction project. The introduction of this provision into evidence was therefore irrelevant in determining the authority of third-party plaintiffs over the carpentry work performed by plaintiff.

Later, during the course of Wyroski's adverse examination, he was asked whether there were any violations of any safety codes on the job. Counsel for third-party plaintiffs objected on relevancy grounds and the court sustained the objection, adding that the question called for a conclusion. It is now asserted that the ruling was incorrect since the witness had previously testified that his responsibilities included dealing with State inspectors.

In our view, the trial court properly sustained the objection because the question was irrelevant, and it invited a conclusory response. First, the question was irrelevant since the question was overbroad and referred to *any* violations of safety codes, not to infractions which led to plaintiff's injuries. Second, the question would have required Wyroski, who was not a safety expert, to testify to conclusions rather than facts based upon his personal observations.

Another related avenue of alleged error occurred when objection was sustained in a question of Wyroski as to whether all construction work in the State was subject to safety regulations by the State. The witness answered that he did not know the answer to this question. Third-party defendant's assertion that this ruling interfered with his right of adverse examination of the witness is unfounded, as the inquiry was simply beyond Wyroski's personal knowledge. We also note that the trial court properly sustained another objection to a question regarding safety violations which was made at the conclusion of Wyroski's examination, for the reasons previously discussed.

The last instance of alleged impropriety regarding the court's evidentiary rulings concerns the court's refusal to admit portions of an evidentiary deposition of Laurence Columbe, the owner and president of the company that employed plaintiff.

On October 29, 1977, Columbe's evidentiary deposition was taken by the attorney for the original plaintiff. In the deposition, Columbe related a conversation he had on the day the plaintiff was injured with Carter, an elderly laborer for Fragman, in which the latter stated that he had knocked down the brace supporting the shelf on the day prior to the accident. It is not disputed that the contents of the conversation are hearsay, but third-party defendant maintains that it is admissible under the declaration against interest exception to the hearsay rule.

■■ A declaration against interest by a third party is admissible as an exception to the hearsay rule when the following requirements are met: (1) the declarant is unavailable; (2) the declaration was against the declarant's pecuniary interest when made; (3) the declarant had competent knowledge of the facts declared; and (4) the declarant had no probable motive to falsify (*Buckley v. Cronkhite* (1979), 74 Ill. App. 3d 487, 393 N.E.2d 60). The trial court in the instant case excluded the excerpt from the deposition offered pursuant to Supreme Court Rule 212(b) (Ill. Rev. Stat. 1979, ch. 110A, par. 212(b)) because the first two grounds for admissibility were not met. We find that the ruling was justified under the "unavailable declarant" prerequisite, and no other grounds therefore merit discussion.

■■ A party seeking to introduce into evidence a declaration against interest has the burden of showing that reasonable diligence was made to secure and present declarant's testimony (*Burton v. Drake's Mayors Row Restaurant, Inc.* (1977), 53 Ill. App. 3d 348, 368 N.E.2d 771; *Swearinger v. Klinger* (1968), 91 Ill. App. 2d 251, 234 N.E.2d 60). The perfunctory efforts made in this case to secure and present Carter's trial testimony were insufficient and did not warrant the substituted use of his deposition testimony. The record shows that there was no attempt to serve Carter with a subpoena to obtain his presence at the time of trial in January of 1979. Instead, reliance was placed upon a report made by an investigator hired by plaintiff, dated September 30, 1975, stating that the investigator was unable to find Carter at his last known address. Third-party defendant made no effort on its own behalf to locate Carter, with the exception of one or two phone calls made on the eve of trial. No showing was made by third-party defendant of endeavors to contact the post office, to consult the election commission or to request additional information through discovery from Fragman, Carter's previous employer. Based upon these facts, we hold that the trial court properly excluded portions of the hearsay conversation between two witnesses who were not subject to cross-examination at trial.

Third-party defendant's final contention is that the trial court erred in ruling in favor of third-party plaintiffs' motion for a directed verdict.

■■ It is fundamental that a directed verdict in a party's favor will not be overturned on review when all of the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the non-moving party, so overwhelmingly favor the movant that no contrary verdict could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Our review of the evidence, when measured against the *Pedrick* standard, compels us to conclude that the trial court correctly ruled on the motion for directed verdict. A brief summary of the evidence is appropriate.

Plaintiff and Drapak, his assistant, testified that they were employed by Columbe at the time of the accident. Temporary supports, not stabilized on the floor of the building, were being used during the construction process to brace the shelving. According to Drapak, it was the misplacement of one of these braces which led to plaintiff's injuries. Immediately prior to the incident, plaintiff had climbed on top of the shelving by using an A-frame ladder. Employing the ladder in the actual erection of the shelving was impossible because it was unstable and unsafe. A rolling scaffold was, in plaintiff's opinion, the "best condition" from which to operate. According to custom and practice in the carpentry industry, the carpentry subcontractor provided all necessary tools and equipment other than a tradesman's own hand tools. While other subcontractors had rolling scaffolds on the jobsite, Columbe did not supply one to plaintiff or his co-workers. Plaintiff opined that perimeter guarding was not customarily provided to workers. Plaintiff did not know the actual cause of the accident.

Wyroski, Fragman's superintendent, testified that the best way for plaintiff to have installed the shelving was by use of a rolling scaffold. He noted that various other structures including checkout counters and floor tiling were being installed in the area where plaintiff was injured on November 10, 1972.

Stevenson, the safety expert, had knowledge of the case only by way of the hypothetical question posed to him at trial. He stated that the use of an A-frame ladder was not a reasonable method for completing the work in question. In his opinion, there were no safety precautions undertaken for plaintiff by Columbe. Neither perimeter guarding nor a rolling scaffold was supplied to facilitate the work.

Portions of the contract between Fragman and Columbe were admitted into evidence which provided that Columbe was responsible for furnishing all equipment including scaffolding, and all labor and personnel necessary to complete the carpentry work according to specifications.

Finally, Wyroski's testimony on adverse examination in defendant's case-in-chief added little to his previous testimony. He stated that he had no formal safety training, but that he would deal with safety inspectors who visited the jobsite.

When an injury results from the "active" negligence of a subcontractor rather than the "passive" negligence of an owner or general contractor, the former is required to indemnify the latter for the plaintiff's claims under the Structural Work Act. (*National Oats Co. v. Volkman* (1975), 29 Ill. App. 3d 298, 330 N.E.2d 514.) In determining the relative culpability of the parties in an indemnity action, the court in *Rovekamp v.*

*Central Construction Co.* (1964), 45 Ill. App. 2d 441, 195 N.E.2d 756, stated:

> "Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work, to be sure, but of different phases of the work. Neither can escape liability to the plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury." *Rovekamp*, 45 Ill. App. 2d 441, 449, 195 N.E.2d 756, 760.

■■ In the present case, the evidence shows that Columbe had control of the particular work that led to plaintiff's injury, yet failed to provide him with safe equipment with which to complete his duties. Furnishing plaintiff with the necessary tools and scaffolding for the construction process was required of Columbe by law (see *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724, *cert. denied* (1968), 393 U.S. 935, 21 L. Ed. 2d 271, 89 S. Ct. 296), as well as by the terms of the contract it had with Fragman. In addition, the testimony at trial established that a rolling scaffold or perimeter guarding should have been provided plaintiff, instead of the unstable shelving upon which he was forced to kneel.

Fragman, according to all the testimony, merely supervised and coordinated the project for the owners, Bargain Town and Toys-R-Us. Fragman's only employee on the job, with the exception of Carter, was Wyroski, who only ensured that the subcontractors performed their jobs according to specifications.

Based upon the foregoing, we conclude that Columbe was responsible for plaintiff's injuries and it must therefore indemnify the general contractor and owners. The trial court properly directed a verdict in favor of third-party plaintiffs.

Accordingly, the judgment of the circuit court is hereby affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.