JOHN PEDERSON, Plaintiff-Appellee, v. MI-JACK PRODUCTS, INC., Defendant and Third-Party Plaintiff-Appellee (Terex-RO, Inc., *et al.*, Defendants and Third-Party Defendants-Appellees; Henkels and McCoy, Inc., Third-Party Defendant and Intervenor-Appellant).

First District (2nd Division)   Nos. 1—07—2327, 1—07—3228 cons.

Opinion filed March 10, 2009.

34

Terry A. Fox and Michael Resis, both of Smith Amundsen LLC, of Chicago, for appellant.

Ashley Danielle Lyles and Joseph Michael O'Callaghan, of Chicago, for appellee John Pederson.

Stanley V. Boychuck and Kevin V. Boyle, both of Chicago, for appellees Terex-RO, Inc., and Terex, Inc.

Bruce M. Wall, Scott J. Brown, and Julie A. Teuscher, all of Chicago, for appellee Mi-Jack Products, Inc.

JUSTICE SOUTH delivered the opinion of the court:

Third-party defendant and intervenor-appellant, Henkels & McCoy, Inc. (Henkels), appeals from various orders that were entered by the circuit court in plaintiff John Pederson's product liability and negligence action.

Pederson, who was a Henkels employee, was injured on March 23, 1999, when a boom jib from a truck-mounted crane fell on him. On March 23, 2001, two days prior to the expiration of the two-year statute of limitations, Pederson filed a complaint sounding in negligence and product liability against Mi-Jack Products, Inc. (Mi-Jack), which was the company that leased the crane to Henkels; United Rentals, a company that purchased equipment from Mi-Jack; and Terex Corporation (Terex), the alleged manufacturer of the crane.

On August 10, 2001, after learning that Terex-RO, Inc. (Terex-RO), a subsidiary of Terex Aerials, Inc. (a Terex subsidiary), was the actual manufacturer of the boom crane, Pederson filed his first amended complaint naming Terex-RO as a defendant. The amended complaint was filed four months after the expiration of the applicable statute of limitations, and the trial court subsequently dismissed Terex-RO from Pederson's lawsuit based upon Pederson's failure to timely file suit against Terex-RO. United Rentals was voluntarily dismissed from the suit, and the cause proceeded against Mi-Jack and Terex.

Mi-Jack and Terex each filed third-party complaints for contribution against Henkels. Mi-Jack also filed a third-party complaint for contribution against Terex-RO. On July 29, 2004, Terex filed a motion for summary judgment on the grounds it was not the manufacturer of the allegedly defective crane; rather, it had been manufactured by Terex-RO, which is a separate corporate entity. Terex supported its motion with an affidavit from Norman Hargreaves, the director of product safety for Terex, who averred that Terex-RO was the manufacturer of the crane, and Terex, a separate corporate entity, did not have any involvement in the manufacture, sale, lease, or shipment of the allegedly defective equipment. At the time Terex filed its motion for summary judgment, it had not responded to Pederson's written discovery requests, which included questions pertaining to Terex's corporate structure, or to Henkels' discovery requests, which sought information about equipment specifications and maintenance.

Thereafter, on April 11, 2005, while Terex's motion for summary judgment was pending, Pederson's attorneys filed a motion for leave to withdraw because an "irreconcilable conflict" had developed. The irreconcilable conflict developed after Pederson initiated a malpractice suit against his attorneys due to their failure to timely file suit against Terex-RO. The trial court granted the motion to withdraw on April 21, 2005. The trial court also granted Pederson leave to file a *pro se* appearance and directed him to file a response to Terex's motion for summary judgment. Pederson filed his *pro se* appearance on May 26, 2005.

On July 20, 2005, Henkels filed a petition to intervene as party plaintiff to protect its workers' compensation lien. On the same date, Henkels also filed a motion to compel discovery against Terex, requesting the trial court to stay ruling on Terex's motion for summary judgment until Terex complied with its outstanding discovery requests.

On July 21, 2005, Pederson filed a *pro se* motion requesting the trial court to vacate its prior order granting his former attorneys' motion to withdraw as counsel. He explained that he had been unable to find another attorney to represent him, and he was not competent to represent himself. The trial court denied the motion. The trial court also granted Terex's motion for summary judgment because Pederson had not responded to that motion and had informed the court that he did not believe he was able to respond to it. The ruling was made over Henkels' objection. Both Pederson and Henkels filed motions to reconsider the summary judgment order.

On August 3, 2005, the trial court granted Henkels' motion to intervene as party plaintiff but held that all prior orders would "stand." Thereafter, Henkels filed an intervenor complaint, and later, an amended intervenor complaint, sounding in negligence, product liability, and breach of warranty.

On August 12, 2005, Mi-Jack filed a motion to bar Pederson and Henkels from identifying and presenting any Illinois Supreme Court Rule 213(f)(3) (177 Ill. 2d R. 213(f)(3)) retained opinion witnesses because Pederson failed to timely disclose any witnesses in conformance with the trial court's prior case management orders. Mi-Jack argued that Henkels, as intervenor, should not be permitted to be in a better position than Pederson. The trial court granted Mi-Jack's motion on October 20, 2005, and struck Henkels' answers to Mi-Jack's Rule 213 interrogatories, which Henkels had filed without leave of court on October 18, 2005.

The trial court entered a second order on October 20, 2005, denying Henkels' and Pederson's motions to reconsider summary judgment in favor of Terex. Thereafter, on March 31, 2006, Pederson filed a motion to consolidate his product liability and negligence action with his

malpractice lawsuit. The trial court granted Pederson's motion to consolidate for the purposes of conducting pretrial settlement conferences on April 18, 2006.

On May 23, 2006, Mi-Jack filed a motion for summary judgment, arguing it was entitled to summary judgment because Pederson was barred from presenting any expert testimony in support of his theories of liability and, therefore, could not prevail in his lawsuit. Three days later, Henkels responded with a motion for summary judgment against Mi-Jack. Thereafter, on June 12, 2006, Mi-Jack filed a motion to reconsider the order permitting Henkels to file a complaint as a party plaintiff, arguing that the intervention violated the express terms of section 5(b) of the Illinois Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 2006)), which permits an employer to file suit only if an injured employee has not filed a claim within three months of the expiration of the statute of limitations. Pederson joined Mi-Jack's motion. Mi-Jack also filed a motion to dismiss Henkels' intervenor complaint, as well as a motion for summary judgment against Henkels.

Thereafter, Pederson filed a *pro se* motion to approve a settlement and adjudicate Henkels' workers' compensation lien. In the motion, Pederson revealed that the parties had taken part in a settlement conference, and Mi-Jack agreed to pay him $50,000 to settle his lawsuit, and Terex-RO agreed to pay Mi-Jack $25,000 to settle Mi-Jack's contribution claim. Pederson stated he was willing to accept the settlement, but Liberty Mutual Insurance Company, Henkels' workers' compensation carrier, refused to accept the terms of the settlement offer. Accordingly, Pederson sought court approval of the settlement offer and disbursement of $29,404.66 to Henkels as compensation for its workers' compensation lien.

On February 20, 2007, the trial court conducted a hearing on the various pleadings that the parties had submitted. At the conclusion of the hearing, the trial court found that Henkels could remain a party plaintiff because it was entitled to protect its lien, but it would not be permitted to sue in its own right; rather, Henkels would be required "to stand by the complaint of the plaintiff." Accordingly, the trial court struck Henkels' intervenor complaint. The trial court also held that Pederson would not be able to settle the case or "do anything that's going to interfere with the protection of the intervenor's lien." Pursuant to the court's order, Henkels and Pederson would share joint control over the litigation.

On May 8, 2007, Mi-Jack filed a motion seeking modification of the trial court's February 20, 2007, order, arguing that section 5(b) of the Act prohibited Henkels from sharing joint control of Pederson's

lawsuit. The trial court granted Mi-Jack's motion on June 7, 2007, and entered an order instructing the parties that the litigation would "move forward under the sole control of Plaintiff John Pederson" and that Henkels "is merely third-party defendant."

Based on the trial court's ruling, Pederson again moved to dismiss the case pursuant to the settlement. The trial court, over Henkels' objection, entered an order dismissing all pending claims with prejudice pursuant to the parties' $50,000 settlement on July 19, 2007. The order explicitly provided that Henkels "will be compensated out of the proceeds of the parties' settlement, in accordance with the terms of the Illinois Workers' Compensation Act, 820 ILCS 305/1, *et seq.* to the extent of the available proceeds after payment of all attorneys fees and expenses, if any, in accordance with *In re Estate of Dierkes*, 191 Ill. 2d 326, 333, 730 N.E.2d 1101 (2000) and *Kleeman v. Fragman Construction Co.*, 91 Ill. App. 3d 455 (1980)." The order also denied Henkels' request to maintain a separate action against Mi-Jack following the dismissal of Pederson's case and instructed the parties to file petitions for adjudication of the proceeds of the settlement pursuant to the Act. Henkels filed a motion to stay adjudication of its lien as well as a timely notice of appeal on August 17, 2007.

In accordance with the trial court's order, Pederson filed a motion seeking adjudication of attorney fees and expenses on August 1, 2007. In his motion, Pederson sought $34,491.60 for expenses and $12,500 for attorney fees. Henkels filed a response revealing that it refused to accept any payment from the proceeds of the settlement, which it deemed a "sham." On October 16, 2007, the trial court entered an order finding that Henkels waived its right to claim any portion of the settlement proceeds and, therefore, waived its workers' compensation lien. Accordingly, Pederson was awarded the entire proceeds of the $50,000 settlement. Henkels' motion to stay adjudication of the lien was also denied. Henkels then filed a second notice of appeal, and those appeals were consolidated in this court.

On appeal, Henkels raises the following issues for our consideration: (1) whether the trial court deprived it of the protections afforded to employers by section 5(b) of the Act (820 ILCS 305/5(b) (West 2006)) when it held that (a) Henkels could not proceed as a party plaintiff in plaintiff John Pederson's product liability and negligence action, (b) when it granted defendant Terex, Inc.'s motion for summary judgment without requiring Terex to respond to outstanding written discovery requests; and (2) whether the trial court erred in dismissing Pederson's case pursuant to the settlement over Henkels' objection.

Henkels first contends that the trial court erred in preventing it

from proceeding as a party plaintiff in order to protect its workers' compensation lien when Pederson did not have the ability or the incentive to prosecute the case *pro se* because he was pursuing a malpractice suit against his former attorneys for their failure to timely file suit against the manufacturer of the allegedly defective equipment which caused his injury. Henkels contends the trial court's ruling deprived it of the protections afforded to employers under section 5(b) of the Act (820 ILCS 305/5(b) (West 2006)).

Whether the trial court properly interpreted and applied the provisions of the Act to protect Henkels' lien interests is an issue of law subject to *de novo* review. *In re Dierkes*, 191 Ill. 2d 326, 330 (2000).

■ The Act is a comprehensive statutory enactment that is designed to provide protection and compensation to employees who sustain injuries during the course of their employment and whose earning potentials are diminished or terminated as a result of their injuries. *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437, 444 (1976); *Irizarry v. Illinois Central R.R. Co.*, 377 Ill. App. 3d 486, 495 (2007). Pursuant to the terms of the Act, an employer may be required to compensate an injured employee even though the employer did not cause or contribute to the employee's injuries. *Gallagher v. Lenart*, 226 Ill. 2d 208, 238 (2007). Accordingly, section 5(b) of the Act sets forth the rights available to employees and employers when an employee suffers injuries that are caused in whole, or in part, by third-party tortfeasors. 820 ILCS 305/5(b) (West 2006); *Gallagher*, 226 Ill. 2d at 238.

Specifically, section 5(b) provides four remedies to an employer that is required to pay workers' compensation benefits to an employee whose injuries were caused by a third-party tortfeasor: (1) a lien against compensation that an employee recovers from a third party for any workers' compensation benefits the employer pays; (2) the right to intervene in any lawsuit filed by the employee to ensure that all orders are entered for the employer's protection; (3) the right to ensure that no release or settlement is entered between the employee and the tortfeasor without the employer's written consent unless the employer has been fully indemnified or is protected by court order; and (4) the right to bring suit against a third party three months prior to the expiration of the statute of limitations if the employee has not done so. *Chubb Group Insurance Cos. v. Carrizalez*, 375 Ill. App. 3d 537, 539-40 (2007). Accordingly, while the Act permits an employer to institute an action against a third-party tortfeasor, the employer's right is limited. *J.L. Simmons Co. v. Firestone Tire & Rubber Co.*, 108 Ill. 2d 106, 113 (1985). "Section 5(b)'s limitation on the employer's right to bring the original action against any third party until the

employee has been given ample opportunity to institute his own action reflects the legislature's desire to protect the employee from an employer who desires only to recoup the amount it has paid in compensation and nothing more." *J.L. Simmons*, 108 Ill. 2d at 113. Although an employee who files an independent action against a third-party tortfeasor may consent and permit his employer to join the lawsuit as a party plaintiff, without the requisite consent, the employer's right of intervention is limited to ensuring that its lien rights are protected by court order. *J.L. Simmons*, 108 Ill. 2d at 113; *Sjoberg v. Joseph T. Ryerson & Son, Inc.*, 8 Ill. App. 2d 414, 418 (1956).

■ Here, Pederson filed his complaint on March 23, 2001, two days prior to the expiration of the applicable statute of limitations. At no time within three months of the expiration of the statute of limitations did Henkels file suit. Accordingly, pursuant to the express provisions of the Act, Henkels did not have the right to intervene as a party plaintiff in Pederson's lawsuit absent Pederson's consent. 820 ILCS 305/5(b) (West 2006); *J.L. Simmons*, 108 Ill. 2d at 113; *Sjoberg*, 8 Ill. App. 2d at 418. The record is clear that Pederson never consented to Henkels' intervention as a party plaintiff. Thus, while the trial court initially erred in deeming Henkels a party plaintiff and permitting Henkels to file an intervenor complaint, it corrected the error when it later held that Pederson was the sole plaintiff and Henkels' role was as a third-party defendant.

Notwithstanding the plain language of the Act, Henkels suggests it should have been permitted to proceed as a party plaintiff because Pederson possessed neither the incentive nor the ability to prosecute the case once he initiated the malpractice suit against his former attorneys. Specifically, Henkels contends that the malpractice case created a conflict between it and Pederson, and because their interests differed, the trial court should not have permitted Pederson to withhold his consent from allowing it to proceed as a plaintiff to protect its lien rights.

In most workers' compensation cases, employees and employers have identical interests in maximizing the recovery an employee receives because the employer receives compensation first from the monetary award the employee receives from a third party; however, courts have recognized that the interests of an employee and an employer may not always align. *J.L. Simmons*, 108 Ill. 2d at 114; *Sjoberg*, 8 Ill. App. 2d at 417-18. Notwithstanding the existence of, or potential for, any conflict of interest between an employer and an employee, it is still the rule that an employer may not intervene and participate as a party plaintiff absent the consent of the employee, because the Act is designed to protect the employee from an employer's

unwanted intrusion. *J.L. Simmons*, 108 Ill. 2d at 114; *Sjoberg*, 8 Ill. App. 2d at 417-18.

Here, although Pederson filed a malpractice suit, Pederson's interest at all times was to maximize recovery; however, his ability to do so in his product liability and negligence case was jeopardized when his former attorneys failed to timely initiate suit against Terex-RO, the manufacturer of the allegedly defective equipment which caused his injury. Accordingly, we do not necessarily agree that the malpractice claim created a conflict of interest between Pederson and Henkels. Nevertheless, even if a conflict existed, this would not have given Henkels the right to proceed as a plaintiff without Pederson's consent. *J.L. Simmons*, 108 Ill. 2d at 114; *Sjoberg*, 8 Ill. App. 2d at 417-18. Accordingly, because Henkels failed to file suit within three months of the expiration of the statute of limitations, and because Pederson declined to permit Henkels to proceed in the capacity of a party plaintiff, the trial court did not circumvent Henkels' lien rights or commit error when it held that Henkels' role in the lawsuit was limited to that of a third-party defendant.

■ Henkels next disputes the trial court's order awarding summary judgment in favor of Terex. Specifically, Henkels contends that the trial court circumvented its lien rights when it (a) granted Terex's motion for summary judgment despite Terex's noncompliance with outstanding discovery requests, and (b) refused Henkels' request to vacate the summary judgment order and require Terex to respond to discovery. Henkels argues it was unable to respond to Terex's motion for summary judgment because Terex failed to comply with discovery requests that sought information regarding Terex's corporate structure.

Discovery is a " 'mechanism for the ascertainment of truth and for the purpose of promoting either a fair settlement or a fair trial.' " *Jordan v. Knafel*, 378 Ill. App. 3d 219, 235 (2007), quoting *Computer Teaching Corp. v. Courseware Applications, Inc.*, 199 Ill. App. 3d 154, 157 (1990). Trial courts are afforded wide latitude in determining the permissible scope of discovery, and their rulings on discovery matters are generally reviewed for an abuse of discretion. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 869 (2008); *Jordan*, 378 Ill. App. 3d at 235. Summary judgment is an appropriate mechanism to employ to dispose of a lawsuit where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2006). A motion to vacate a summary judgment order appeals to a court's equitable powers and should

be granted "to prevent enforcement of a judgment or dismissal of an action when it would be unfair, unjust or inequitable." *Kirk v. Michael Reese Hospital & Medical Center*, 275 Ill. App. 3d 170, 173 (1995).

Terex filed a motion for summary judgment on July 23, 2001, alleging it was entitled to summary judgment because it was not the manufacturer of the allegedly defective equipment that caused Pederson's injuries. The motion was supported by the affidavit of Norman Hargreaves, Terex's director of product safety, who averred that: Terex-RO manufactured the crane; Terex and Terex-RO were separate corporate entities; and Terex had no involvement in the manufacture, sale, lease, or shipment of the equipment at issue in the case. On September 6, 2001, Pederson filed interrogatory and production requests seeking information pertaining to Terex's corporate structure. Terex did not respond to Pederson's discovery requests, nor did it obtain a ruling on its summary judgment motion. Thereafter, on January 20, 2005, and January 21, 2005, Henkels served its own interrogatory and production requests on Terex. Henkels' discovery requests did not pertain to Terex's corporate structure; rather, Henkels sought information about Terex's equipment specifications and equipment maintenance procedures. Terex did not respond to Henkels' discovery requests but instead filed an amended motion for summary judgment on June 2, 2005, on the same grounds as its original motion. Neither Pederson nor Henkels filed a response to Terex's motion; however, on July 20, 2005, Henkels filed a motion to compel Terex to respond to its prior discovery requests. In addition, Henkels urged the trial court not to rule on Terex's amended motion for summary judgment until Terex complied with its discovery requests in order to allow Henkels to draft a cogent response to Terex's motion. The trial court granted Terex's summary judgment motion on July 21, 2005, over Henkels' objection, and thereafter, denied Henkels' motion to reconsider on August 3, 2005.

We find, based upon these facts, the trial court's ruling on Henkels' motion to compel discovery was not an abuse of discretion. Although Pederson's discovery requests pertained to Terex's corporate structure and would arguably have been relevant for a proper response to Terex's summary judgment motion, Henkels' discovery requests only sought information about equipment specifications and maintenance, which were irrelevant to the substance of Terex's motion. Despite its argument on appeal, Henkels' motion to compel discovery only pertained to the completion of its discovery requests, not Pederson's outstanding requests. Because the information which Henkels sought was irrelevant and unnecessary for a response to Terex's motion for summary judgment, the trial court did not err in denying

Henkels' motion to compel and awarding summary judgment in favor of Terex. *Cf. Cole Taylor Bank v. Corrigan*, 230 Ill. App. 3d 122, 126-31 (1992).

■ Henkels next disputes the trial court order dismissing Pederson's case pursuant to settlement because the settlement circumvented its rights under section 5(b) of the Act. Specifically, Henkels asserts that the trial court failed to protect it by court order as required by the Act when it did not consent to the settlement and the settlement failed to fully indemnify it. Henkels also contends that the trial court erred when it failed to appropriately consider the circumstances surrounding the settlement and found that it had waived its lien rights.

Section 5(b) of the Act contemplates settlement. 820 ILCS 305/5(b) (West 2006). In pertinent part, this section states:

> "No release or settlement of claim for damages by reason of such injury or death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both employer and employee or his personal representative, *except in the case of the employers, such consent is not required where the employer has been fully indemnified or protected by Court order.*" (Emphasis added.) 820 ILCS 305/5(b) (West 2006).

In this case, Henkels neither consented to the settlement nor was it fully indemnified. However, the order entered by the trial court dismissing the case pursuant to settlement expressly recognized Henkels' lien rights under the Act. Specifically, the court's order provided that Henkels "will be compensated out of the proceeds of the parties' settlement, in accordance with the terms of the Illinois Workers' Compensation Act, 820 ILCS 305/1, et seq. to the extent of the available proceeds after payment of all attorneys fees and expenses, if any, in accordance with *In re Estate of Dierkes*, 191 Ill. 2d 326, 333, 730 N.E.2d 1101 (2000) and *Kleeman v. Fragman Construction Co.*, 91 Ill. App. 3d 455 (1980)." Accordingly, Henkels was protected by court order as required by section 5(b) of the Act. See *Kleeman v. Fragman Construction Co.*, 91 Ill. App. 3d 455, 459-60 (1980) (finding that an order providing that the employer " 'shall be compensated in accordance with the applicable statute' " provided adequate protection to the employer as required by the Act).

Although the plain language of the Act does not require an employer's consent to validate a settlement agreement between an employee and a third-party tortfeasor as long as the employer's lien rights are protected by court order, Henkels cites to *Jackson v. Zurich American Insurance Co.*, 542 N.W.2d 621 (Minn. 1996), and urges this court to apply Minnesota law, which provides that a settlement agreement entered into without an employer's consent is void and has no

effect on an employer's rights against a third-party tortfeasor. We decline to apply Minnesota law inasmuch as decisions in other state courts are not binding where there is Illinois law which addresses the issue. *State Farm Mutual Automobile Insurance Co. v. Coe*, 367 Ill. App. 3d 604, 613 (2006).

Henkels also argues that the trial court failed to adequately consider the circumstances surrounding the settlement. Specifically, Henkels asserts that the trial court ignored the fact that Pederson orchestrated the settlement for a nominal amount in order to circumvent its lien rights and remove an impediment to his pending malpractice action.

There is no evidence that the trial court failed to adequately consider the circumstances surrounding the settlement. While the settlement amount may have been less than the amount of compensation benefits which Henkels paid to Pederson, the Act does not require a workers' compensation settlement agreement to fully compensate the employer in order to be valid. See *In re Estate of Dierkes*, 191 Ill. 2d 326, 333 (2000) (recognizing that the compensation that an employer pays may exceed an employee's recovery from third parties); *Smith v. Louis Joliet Shoppingtown L.P.*, 377 Ill. App. 3d 5, 8 (2007). Moreover, in detailing the circumstances surrounding the settlement, Henkels ignores the fact that the terms of the settlement resulted from Pederson's failure to timely bring suit against the manufacturer of the allegedly defective piece of equipment that caused his injury.

Finally, Henkels contends the trial court erred in finding that it waived its lien rights; however, it fails to provide any argument in support of its assertion, which is a violation of Illinois Supreme Court Rule 341(h) (210 Ill. 2d R. 341(h)). Therefore, we find the issue is waived.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

KARNEZIS, P.J., and HOFFMAN, J., concur.