MICHAEL EWANIC *et al.*, Plaintiffs, v. PEPPER CONSTRUCTION COMPANY *et al.*, Defendants (Pepper Construction Company, Third-Party Plaintiff; Kelso-Burnett Company, for the Use and Benefit of its Insurers, Risk Enterprise Management *et al.*, Third-Party Plaintiffs-Appellees; F.E. Moran, Inc., Third-Party Defendant-Appellant).

First District (2nd Division)   No. 1—98—1221

Opinion filed May 25, 1999.

William F. DeYoung, Mark A. Stang, and Matthew J. Hughes, all of Burke, Weaver & Prell, of Chicago, for appellant.

O'Connor, Schiff & Myers, of Chicago (Robert A. Dawczak, of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

Michael Ewanic and his wife, Patricia, sued Kelso-Burnett Company and Pepper Construction Company, seeking compensation for an injury he suffered while working on a construction project. Kelso-Burnett sued Ewanic's employer, F.E. Moran, Inc., under the Joint Tortfeasor Contribution Act (the Act) (740 ILCS 100/0.01 *et seq.* (West 1992)). Pepper Construction agreed to pay the Ewanics $250,000 in settlement. Kelso-Burnett's insurers, Risk Enterprise Management and Crum & Forester, also reached a settlement with the Ewanics, and the case proceeded to trial on Kelso-Burnett's contribution claim against Moran. Moran appeals from judgment entered on the jury's verdict holding Moran liable for 12% of the amount Kelso-Burnett's insurers paid in settlement.

Pepper Construction, the general contractor, hired Kelso-Burnett as the electrical subcontractor and Moran as the plumbing contractor. Ewanic worked for Moran as a pipefitter.

Prior to trial Moran asked the court to permit evidence of Ewanic's contributory negligence. The court held that the settlement already included a reduction from the Ewanics' total damages based on Kelso-Burnett's affirmative defense of contributory negligence. Therefore, the court concluded that permitting the jury to allocate part of the fault to Ewanic and deducting that percentage from the

settlement amount would give Moran a double deduction from the Ewanics' actual damages.

However, the court agreed that the argument presented a novel legal issue. The court disallowed the evidence but held that, following trial without allocation of fault to Ewanic, the court would permit the parties to introduce evidence on the issue and argue to the jury for an allocation of responsibility to Ewanic. The jury would then return a second verdict allocating responsibility to the tortfeasors and Ewanic.

Ewanic testified that on January 2, 1992, while he was installing a gas pipe in an office on the top floor of the building under construction, he suddenly felt an electric shock run into one arm, through his body, and out to the pipe. He found himself on the floor, looking up at an open electrical junction box with wires hanging down. He had not noticed the wires before, but he saw such junction boxes frequently in his work. He expected the power to be off because the building was still under construction. Someone at the scene tested the uncapped wires and found that the power was on.

Fred Miller, Ewanic's foreman, could not remember Moran supplying any safety manual or other written information concerning electrical hazards. He saw the electrical junction box before Ewanic started installing the gas pipeline. He testified that he did not mention the junction box to anyone because "the power's never turned on in new construction." Especially as the office had temporary lighting, not powered through the building's electrical system, he had no reason to suspect the power might be on.

Clifford Van Wormer, Kelso-Burnett's job superintendent, admitted that Kelso-Burnett, as the electrical contractor, had sole responsibility for making sure junction boxes remained covered and wires remained capped during construction. He testified that permanent lighting had been installed in the office where Ewanic worked "maybe a month, maybe six weeks" before the accident. He added that part of "that ceiling [would] have been powered up" at the time of lighting installation. He admitted that Kelso-Burnett had a responsibility to notify the general contractor when permanent lighting received power, but he did not know when Kelso-Burnett so informed Pepper.

Moran proposed two special interrogatories:

"We the jury believe that the conduct of Michael Ewanic, who is not a party to this suit, was the sole proximate cause of Michael Ewanic's injuries.

YES ____          NO ____"

and:

"Did Kelso-Burnett Company, for the use and benefit of its insurers, Risk Enterprise Management and Crum & Forester Managers

Corporation, pay in excess of its pro rata share of the common liability to the plaintiff, Michael Ewanic?"

The court refused both special interrogatories.

In closing arguments Kelso-Burnett conceded its negligence partly caused the injury. However, Kelso-Burnett claimed that Moran should have tested the loose wires Miller saw and the failure to do so also contributed to causing the accident. Moran argued that Kelso-Burnett's negligence formed the principal cause, and Pepper, which failed to supervise Kelso-Burnett's work properly, should share responsibility. Moran only trusted Kelso-Burnett to do its job.

The jury returned a verdict apportioning 23% of the responsibility to Pepper, 65% of the responsibility to Kelso-Burnett, and 12% of the responsibility to Moran.

Although the court permitted further evidence on the issue of Ewanic's contributory negligence, neither party presented any witnesses. Moran's attorney suggested that if the court had so allowed initially, he would have asked Ewanic on cross-examination about his safety training and whether he blamed himself for the accident. The judge observed that he did not restrict evidence at trial on Ewanic's training, and both parties had elicited testimony on the issue. The judge would have sustained an objection to the question regarding blame. Moran made no further offer of proof and made no allegation that the answers to the proposed questions would have favored Moran. Ewanic's deposition and testimony provide no support for any assertion that the proposed questions could have helped Moran.

Kelso-Burnett suggested that the jury should find Ewanic had at most 5% of the responsibility for the injury. The attorney recommended deducting that percentage from Pepper's liability. Moran argued that Ewanic bore between 4% and 10% of the responsibility for the injury, and any reduction should come from Moran's share of fault. Moran presented no argument for finding Ewanic solely responsible for the accident.

The jury again apportioned 65% of the responsibility to Kelso-Burnett and 12% to Moran, but it reduced Pepper's share to 20% while holding Ewanic 3% contributorily negligent.

The court did not include Pepper's settlement as part of the amount to be apportioned. The court denied Moran's posttrial motions and entered judgment against Moran for $162,000, 12% of the $1.35 million Kelso-Burnett's insurers paid in settlement, plus costs.

■■ Moran challenges the trial court's refusal of its special interrogatories.

"We review a judge's decision not to give an interrogatory as a question of law. [Citation.] Generally, a trial judge has no discretion

to reject a special interrogatory that is proper in form. [Citation.] Likewise, however, it is error for a trial judge to submit a special interrogatory on an issue when the record contains no evidence upon which the jury could rely to answer the question." *Morton v. City of Chicago*, 286 Ill. App. 3d 444, 451-52, 676 N.E.2d 985 (1997). The court must consider a special interrogatory in light of all the instructions to determine how the jury would understand it. *DiMarco v. City of Chicago*, 278 Ill. App. 3d 318, 322, 662 N.E.2d 525 (1996). A special interrogatory must be single and direct, not misleading or prejudicial (*Fakhoury v. Vapor Corp.*, 218 Ill. App. 3d 20, 27, 578 N.E.2d 121 (1991)), and it must concern a material question of fact (*DiMarco*, 278 Ill. App. 3d at 322). A case presents a material question of fact if the evidence could support more than one conclusion regarding the question. *Robinson v. Builders Supply & Lumber Co.*, 223 Ill. App. 3d 1007, 1013, 586 N.E.2d 316 (1992).

■ In one interrogatory, Moran sought to ask whether Ewanic alone bore full responsibility for the accident. Kelso-Burnett admitted partial responsibility for the accident, and Moran accepted that admission, relying upon it in arguments to the jury. Kelso-Burnett argued that the jury should attribute no more than 5% of the responsibility for the accident to Ewanic; Moran argued that the jury should attribute from 4% to 10% of the responsibility to Ewanic. Neither in the trial court nor on appeal has Moran presented any argument for finding Ewanic solely responsible for the accident on the facts of this case. Thus, the evidence can support only the conclusion that Ewanic did not bear sole responsibility for the accident. As the interrogatory did not present a material question of fact, the trial court properly refused it. See *Johnson v. Ward*, 6 Ill. App. 3d 1015, 1021, 286 N.E.2d 637 (1972).

■ The other interrogatory concerned whether Kelso-Burnett paid in excess of its *pro rata* share of the common liability. The trial court rejected the instruction because it invited the jury to speculate on whether Kelso-Burnett paid an appropriate amount in settlement and that issue should not go to the jury. We agree. As the court held in *Orejel v. York International Corp.*, 287 Ill. App. 3d 592, 602-03, 678 N.E.2d 683 (1997), a contribution defendant has no right to a jury determination of whether the contribution plaintiff paid a reasonable amount in settlement of the injured person's claim. The jury only allocates percentages of the common liability. The proposed interrogatory, as the jury probably would have understood it, would invite a verdict on the propriety of the amount Kelso-Burnett's insurers paid in settlement. The trial court correctly rejected the special interrogatories.

■ Finally, Moran argues that the court erred by initially submitting a verdict form which permitted no assessment for Ewanic's liability. The Act, which codifies the holding of *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1 (1978), establishes the rights of tortfeasors to apportionment of liability on the basis of their relative degrees of fault for causing the plaintiff's injuries. See *Skinner*, 70 Ill. 2d at 14; *People v. Brockman*, 143 Ill. 2d 351, 366, 574 N.E.2d 626 (1991). "The basis for a contributor's obligation depends on his liability in tort to the injured party." *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.*, 223 Ill. App. 3d 444, 449, 585 N.E.2d 166 (1991). Thus, the Act limits apportionment to those "subject to liability in tort" for the injuries. 740 ILCS 100/2(a) (West 1992). As Ewanic is not subject to liability in tort to himself, the Act does not support allocation of responsibility to him.

Moran claims that *Truszewski v. Outboard Motor Marine Corp.*, 292 Ill. App. 3d 558, 561, 685 N.E.2d 992 (1997), requires apportionment of liability to Ewanic. We disagree. *Truszewski* shows that Moran has already received an improper benefit of a double deduction from the total damages the Ewanics suffered; Moran should not receive a second double deduction for contributory negligence.

■ The court in *Truszewski* defined the common liability to be distributed as the " 'total sum of the liability of all persons who contributed as a cause to the plaintiff's injury.' " 292 Ill. App. 3d at 561, quoting Illinois Pattern Jury Instructions, Civil, No. 600.00 (3d ed. 1994). This definition shows that the trial court here improperly excluded from the common liability the amount Pepper paid in settlement of the claims. The court effectively deducted that settlement from the common liability. By including Pepper on the verdict form as a party to whom the jury should allocate liability, the court permitted a second deduction based on the same acts or omissions.

*Truszewski*'s definition of the common liability does not require the inclusion of the injured plaintiff on the verdict form as a person against whom the jury must assess liability. Such inclusion would permit a double deduction similar to that which the court here permitted for Pepper's fault. When Kelso-Burnett settled the claim, the parties had the opportunity to adjust the amount of the settlement for Ewanic's contributory negligence. (If the parties anticipated the jury's finding that Ewanic bore 3% of the responsibility for his injuries, they estimated his total damages at $1.65 million and deducted from that $50,000 for contributory negligence. Pepper paid $.25 million and Kelso-Burnett settled for the remaining $1.35 million of anticipated liability.) Thus, the settlement already reflected a deduction for Ewanic's contribution to his injuries. By apportioning fault to Ewanic and

deducting that proportion from the already reduced settlement amount, the court would permit a double deduction for the same party's actions or omissions causing injury.

At oral argument Moran conceded that in some cases the apportionment of fault to a plaintiff might lead to a double deduction, but it claimed that the record here did not show that the settling parties considered Ewanic's contributory negligence in arriving at the settlement amount. We disagree. The record includes Kelso-Burnett's answer to the original complaint, and in that answer Kelso-Burnett repeatedly raised the affirmative defense of Ewanic's contributory negligence. The record also includes interrogatories and other discovery concerning the issue. We find ample support for the trial court's inference that the parties considered Ewanic's contributory negligence in reaching the settlement amount. Including Ewanic on the verdict form would permit an unjustified double deduction from the total damages for that contributory negligence. The trial court correctly excluded Ewanic from the verdict form.

The court correctly refused the special interrogatory on Ewanic's responsibility, as Moran presented neither evidence nor argument to show Ewanic was solely responsible for the accident. The other special interrogatory appeared to ask the jury whether Kelso-Burnett paid an appropriate amount in settlement. Because the jury should not determine this issue, the court correctly refused the second special interrogatory. The trial court properly excluded Ewanic's name from the initial verdict. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.