LAWRENCE R. PEMPEK *et al.*, Plaintiffs-Appellees, v. SILLIKER LABORATORIES, INC., Defendant-Appellee (Chubb Insurance Company, as Subrogee of Silliker Laboratories, Inc., Third-Party Plaintiff-Appellee; RMC, Inc., Third-Party Defendant-Appellant).

First District (6th Division)   Nos. 1—98—2455, 1—98—4167 cons.

No. 1—98—2455; order vacated in No. 1—98—4167.

Opinion filed December 23, 1999.

Burke, Weaver & Prell, of Chicago (William F. Young, Loretto M. Kennedy, and James T. Mueller, of counsel), for appellant.

Bollinger, Ruberry & Garvey, of Chicago (Jeremiah P. Connolly, M. Gavin McCarty, and Jamie B. Schwartz, of counsel), for appellees.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:
Plaintiffs, Lawrence and Suzanne Pempek, brought various claims

relating to a fall Lawrence had from a ladder on July 21, 1993, while he was working on the roof of defendant, Silliker Laboratories, Inc. At the time, Lawrence was a heating and air conditioning technician employed by third-party defendant RMC, Inc. Plaintiffs brought their actions against Silliker, and Silliker thereafter sought contribution from RMC under the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 1992)).

After negotiation, Silliker agreed to pay $350,000 to plaintiffs and cover any additional costs caused by the assertion of a workers' compensation lien by RMC. RMC's lien claim was made pursuant to section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1996)). The trial court found this settlement to have been made in good faith on January 30, 1998, leaving only the contribution action remaining between Silliker and RMC. That same day the court ordered Chubb Insurance Company, Silliker's carrier, to deposit $66,782.60 into an interest-bearing checking account to secure RMC's lien.

■ The trial court thereafter held a jury trial on the single question of what percentage of fault, if any, was attributable to RMC. The jury returned a verdict on February 4, 1998, finding RMC was 60% liable for the Pempeks' injuries and Silliker was liable for the remaining 40%. On that same day, the court entered judgement and set a date for a hearing to determine the limit of RMC's liability under the Workers' Compensation Act. The hearing was necessary because our supreme court has determined that, where an injured employee sues a third party who then brings a contribution action against the plaintiff's employer, the employer may be liable only to the extent of the employer's liability to the employee under the Workers' Compensation Act. *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 585 N.E.2d 1023 (1991).

On March 3, 1998, the court held the *Kotecki* hearing but did not enter final judgment until March 25, 1998. On that day the court determined that RMC's "*Kotecki* limit" would be reached by its payment of an additional $43,656.86 over and above what it had previously paid on Pempek's behalf.

On March 25, 1998, the trial court entered an order giving the parties until April 23, 1998, to file any posttrial motions and setting hearing on any such motions for June 8, 1998.

On April 23, 1998, RMC filed a posttrial motion attacking the jury's verdict. RMC did not raise any claims regarding the *Kotecki* hearing. The court denied this motion on June 9, 1998.

On July 9, 1998, RMC filed its notice of appeal, citing Supreme Court Rules 301 and 303 as the basis of appellate jurisdiction (155 Ill.

2d Rs. 301, 303). Subsequently, on August 18, 1998, RMC presented a motion in the circuit court to enforce its lien and seeking an order requiring Chubb to deposit an additional $2,655.11 into the escrow account. RMC claimed that the additional funds were necessary to correct its preliminary estimate of the amount necessary to satisfy the lien. The court initially granted the motion on August 18, 1998, then vacated without comment this order on September 3, 1998. The court subsequently reinstated its August 18, 1998, order on October 20, 1998. Chubb Insurance Company, as subrogee of Silliker, brought a notice of appeal from this order on October 30, 1998.

A review of the facts of the case show that Lawrence Pempek fell because his foot broke through the top rung of the ladder as he was climbing it. Pempek went to Silliker the day before, on July 20, 1993, after receiving a "no cooling call." Randy Coleman, a Silliker employee, met Pempek and accompanied him to the roof. Once on the roof, Pempek determined that he needed to reach a higher tier rooftop. He found a wooden ladder on the roof and used it to gain access to the heating and air conditioning equipment on the second tier. He had used the same ladder 20 to 40 times before when working at Silliker. The ladder was gray and weathered, and the bottom rung of the ladder was missing. At the end of the work day, Pempek required additional materials to complete the job. He left Silliker's premises and returned during the early morning hours of July 21.

When Pempek returned the next day, he found the wooden ladder leaning up against the wall to the second tier, in the same approximate location as where he left it. As he climbed the ladder, he testified that his foot broke through the highest rung, and he fell to the roof below.

Pempek did not recall whether his work truck was equipped with 12-foot extension ladders on the day he fell, but said that even if he had such a ladder on his vehicle, he would not have been able to carry it all the way to the roof. Although there was a permanent metal ladder on the roof affixed to one of the walls to reach the upper tier, Pempek stated that Silliker employees had demonstrated that using the wooden ladder was more convenient. The metal ladder was difficult to climb and hard to get to when compared to the wooden ladder.

Pempek filed a complaint against Silliker claiming that Silliker was negligent and/or violated the Structural Work Act (740 ILCS 150/1 *et seq.* (West 1996)), and that Silliker's negligence and/or violations of the Structural Work Act proximately caused his injuries. Pempek's wife joined in the complaint seeking recovery for loss of consortium. Silliker filed a third-party complaint for contribution against RMC alleging that RMC was negligent and requesting that RMC pay its *pro rata* share of any liability to plaintiffs. Specifically,

Silliker alleged that RMC was negligent in one or more of the following ways: failing to provide Pempek with the equipment necessary to safely perform his work, failing to train Pempek in the use of wooden ladders, and failing to train Pempek to assess the condition of wood ladders before proceeding to use them.

### JURISDICTION OVER APPEAL No. 1—98—2455

Although RMC has raised several issues attacking the jury's verdict finding that RMC was 60% at fault for plaintiffs' injuries, we must first address the difficult question of whether we have proper jurisdiction over the appeal. *Hwang v. Tyler*, 253 Ill. App. 3d 43, 45, 625 N.E.2d 243 (1993).

■ Supreme Court Rule 303(a)(1) provides that a notice of appeal must be filed "within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, *** within 30 days after the entry of the order disposing of the last pending post-judgment motion." 155 Ill. 2d R. 303(a)(1). The timely filing of a notice of appeal under Rule 303 is a jurisdictional requirement. See *J.D. Marshall International, Inc. v. First National Bank*, 272 Ill. App. 3d 883, 888, 651 N.E.2d 518 (1995).

■ The timing of a posttrial motion following a jury trial is governed by section 2—1202 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1202 (West 1998)). It provides in relevant part:

> "Post-trial motions must be filed within 30 days after the entry of judgment or the discharge of the jury, if no verdict is reached, or within any further time the court may allow within the 30 days of any extensions thereof." 735 ILCS 5/2—1202 (West 1998).

Here, since the court entered "judgment" on the jury's verdict on February 4, 1998, section 2—1202 requires that any posttrial motions attacking that judgment be filed on or before March 6, 1998, unless the court determined to extend the deadline prior to that date. The court's order allowing the parties to file "any post-trial motions" on March 25, 1998, came after the March 6, 1998, deadline.

■ Despite the fact that the trial court entered "judgment" on the jury's verdict, RMC argues that the order entered February 4, 1998, did not trigger the timing provisions of section 2—1202. In support of its position, RMC correctly observes that the rules governing appellate jurisdiction and procedure are designed to avoid inefficient and piecemeal appeals. RMC argues that if it had filed a posttrial motion on or before March 6, 1998, and if the court had denied that motion promptly, it would have been forced to take an appeal within 30 days to satisfy Rules 301 and 303, even though the results of the *Kotecki* hearing might not yet be known.

Notwithstanding RMC's argument to the contrary, RMC was

required by supreme court rule to file its posttrial motion, if at all, on or before March 6, 1998. RMC's argument that filing such a motion could lead to multiple appeals is faulty in its premise. Under Supreme Court Rule 303 (and under Rule 304 as well), an appeal may be taken only from a "final judgment." The fact that the court might enter "judgment" on a jury verdict and subsequently deny a timely filed posttrial motion does not necessarily mean that the court has rendered a final judgment in the case. The procedural posture of this case illustrates the point. In Illinois, a judgment is considered final only if it "finally disposes of the rights of the parties either upon the entire controversy or upon some definite and separate branch thereof." *Tyler v. Tyler*, 230 Ill. App. 3d 1009, 1011, 596 N.E.2d 119 (1992). A final judgment "decides the controversy between the parties on the merits and fixes their rights, so that, if the judgment is affirmed, nothing remains for the trial court to do but to proceed with the execution." *In re J.N.*, 91 Ill. 2d 122, 127, 435 N.E.2d 473 (1982).

Clearly, RMC could not have proceeded to execute the judgment entered by the court on February 4, 1998, even if the court had denied a timely filed posttrial motion that same day. This is because the dollar amount of the judgment could not be calculated until the court had resolved RMC's *Kotecki* limit.[1] In such a circumstance, the correct procedure would have been for RMC to file its posttrial motion promptly after the court entered judgment on the jury trial (*i.e.*, within 30 days) and then, if the motion were denied, wait for the court to enter final judgment after the *Kotecki* hearing before attempting to bring an appeal challenging the jury verdict; or, if a timely filed postjudgment motion were filed attacking the *Kotecki* hearing, within 30 days after the resolution thereof. Alternatively, RMC could have sought an extension of the time required for it to file its posttrial motion from the circuit court within 30 days of the entry of judgment, as specifically provided in section 2—1202 of the Code.

We note that the requirement that parties bring their posttrial motions within 30 days of the entry of both final and nonfinal judgments has the effect of promoting, rather than hindering, judicial economy. For example, if the trial court had found merit in RMC's

---

[1] In its brief, Silliker makes the argument that the court's March 25, 1998, order, which the court characterized as a "final judgment," should be considered nothing more than a "clarifying order" or "ancillary matter." We do not agree. The uncertainty that existed following the jury verdict as to the dollar amount RMC owed to plaintiffs precluded the court from entering final judgment until RMC's maximum liability under *Kotecki* was determined. The court correctly waited until after the *Kotecki* hearing to enter final judgment.

claim that judgment notwithstanding the verdict (judgment *non obstante veredicto,* or judgment *n.o.v.*) should have been entered by the court in RMC's favor following the trial, no *Kotecki* hearing would have been necessary. Obviously, it would have been better for the court to have made such a determination on the judgment *n.o.v.* issue prior to the *Kotecki* proceeding, rather than waste considerable time and energy conducting the hearing. The record shows the *Kotecki* hearing involved the testimony of five witnesses and lasted several hours.

We recognize that there has been some confusion among members of the bench and bar as to the proper timing of posttrial motions in complex procedural disputes such as this one. The fact that the court allowed the parties to file posttrial motions attacking the jury verdict more than 30 days after it was rendered, without any reference to the limitations of section 2—1202, illustrates that point. We find, however, that the better reasoned cases support our interpretation of section 2—1202.

In *Bizarro v. Ziegler,* 254 Ill. App. 3d 626, 627 N.E.2d 122 (1993), for example, the court noted that the entry of judgment following a jury trial triggers an obligation of the aggrieved party to file a posttrial motion attacking the decision within 30 days, even though a final judgment has not yet been entered. The court also noted that a party wishing to delay filing a posttrial motion may receive an extension of the deadline from the trial court under section 2—1202, but this extension must be granted within the 30-day period. *Bizarro,* 254 Ill. App. 3d at 637. The trial court did not extend the 30-day limitation in either *Bizarro* or in the case *sub judice.*

A case addressing the same issue, but reaching the opposite result, is the third district's decision in *Morton Buildings, Inc. v. Witvoet,* 70 Ill. App. 3d 55, 388 N.E.2d 258 (1979). In *Morton Buildings* the trial court entered judgment on plaintiff's complaint following a jury trial, but refused to enter judgment on defendant's countercomplaint. Five months after the trial, the court set aside the jury's verdict on the countercomplaint. At this point in time, the plaintiff filed a posttrial motion attacking the jury's verdict on the complaint. The circuit court refused to consider the posttrial motion, but the Third District Appellate Court reversed, finding that the plaintiff properly waited for the countercomplaint to be decided.

We decline to follow *Morton.* That case fails to give proper consideration to the statutes and rules governing appeals in Illinois which make a distinction between "judgments" and "final judgments." *Cf.* 735 ILCS 5/2—1202, 2—1203 (West 1998) with 155 Ill. 2d Rs. 303, 304. Moreover, we note that *Morton Buildings* proceeds from the faulty

premise that all posttrial relief must always be sought in a single post-trial motion. *Morton Buildings*, 70 Ill. App. 3d at 58. Contrary to the assertions of RMC, our supreme court in *Sears v. Sears*, 85 Ill. 2d 253, 422 N.E.2d 610 (1981), clearly contemplated the possibility of multiple posttrial motions. That case, however, involved successive posttrial motions brought after final judgment. In such a circumstance, when final judgment has been entered, the court determined simply that all motions brought subsequent to the first motion fail to stay the circuit court's judgment or extend the time for filing the notice of appeal under Supreme Court Rule 303.

At oral argument, RMC asserted that applying a rigid interpretation to section 2—1202 has the effect of interfering with the trial court's jurisdiction over the proceedings. It is well established that the circuit court generally retains jurisdiction over the entire cause, including the power to revise its prior judgments, for up to 30 days following the entry of a final judgment. See *Petersen Brothers Plastics, Inc. v. Ullo*, 57 Ill. App. 3d 625, 373 N.E.2d 416 (1978). Thus, RMC appears to argue, it is incongruous to conclude that the circuit court has the power to modify nonfinal judgments until the time it loses jurisdiction over the case, but to interpret section 2—1202 to require parties bringing posttrial motions that attack nonfinal judgments to do so within 30 days after their entry. However, it is important to note that our ruling today does not limit in any way the jurisdictional power of the circuit court. We do not hold that the circuit court loses jurisdiction over nonfinal judgments 30 days after they are entered. We hold only that any posttrial motion requesting modification of a judgment made more than 30 days after it is entered cannot stay the time for filing a notice of appeal under Rule 303 (and, by logical extension, Rule 304).

In short, we find that RMC's notice of appeal was untimely because RMC did not file its notice of appeal within 30 days after final judgment was entered. The posttrial motion that RMC did file following the *Kotecki* hearing did not toll the time for filing the required notice of appeal because it was not timely in that it attacked the jury's verdict, not the result of the *Kotecki* hearing. Because there was no timely filed posttrial motion attacking the *Kotecki* proceedings on April 24, 1998—30 days after final judgment—the time in which RMC was permitted to file a notice of appeal under Rule 303 expired.

## JURISDICTIONAL HOLDING PROSPECTIVELY APPLIED

Although we have determined that RMC has failed to meet the timing requirements of Supreme Court Rule 303 in invoking appellate jurisdiction, the question arises whether dismissing the case on jurisdictional grounds comports with due process. The question is sim-

ilar to the one addressed by the court in *Central City Education Ass'n, IEA-NEA v. Illinois Educational Labor Relations Board*, 199 Ill. App. 3d 559, 557 N.E.2d 418 (1990). There, as here, one of the litigants argued that its opponent had not filed a timely notice of appeal. The court agreed that the logical application of the rules governing appellate jurisdiction indicated that the appellant's notice of appeal was untimely, but also determined that "accepted practice" among members of the bar and the Illinois Educational Labor Relations Board supported consideration of the appellant's substantive arguments. *Central City Education Ass'n*, 199 Ill. App. 3d 559, 557 N.E.2d 418. Because the court found it to be inequitable to apply what it determined to be a new interpretation of our supreme court's rules to the jurisdictional issue presented, and because the parties sought review of what was clearly a final order, the court elected to apply its interpretation of the jurisdictional rule prospectively only and address the merits of the case. *Central City Education Ass'n*, 199 Ill. App. 3d 559, 557 N.E.2d 418.

■ The same concerns for fairness must control this case. We have already noted that section 2—1202 and Supreme Court Rule 303 have not been consistently followed by this court, as illustrated by *Bizarro* and *Morton*. As yet, our supreme court has not addressed the question of whether the reasoning of *Bizarro* or *Morton* should be followed. We also note that counsel for Silliker and Chubb failed to point out the timing requirements of section 2—1202 and Rule 303 to the trial court or RMC prior to April 24, 1998, the date on which the 30-day period for filing a timely notice of appeal expired. Instead, they brought the issue to the court's attention in a motion on April 27, 1998, when it was too late for RMC to file a timely notice of appeal. In such a circumstance, where precedent is split on the issue and where there is the potential for injustice in denying appellate review, we believe the better approach requires we apply our jurisdictional analysis prospectively only. Accordingly, we address the substantive issues presented.

## THE TRIAL COURT'S DENIAL OF RMC'S MOTION FOR JUDGMENT *N.O.V.* AND REQUEST FOR A NEW TRIAL

RMC argues that the trial court improperly denied its request for judgment notwithstanding the verdict because Silliker failed to establish that RMC proximately caused Pempek's accident. Alternatively, RMC seeks a new trial.

■ Our supreme court emphasized in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504 (1967), that a different standard is applied to a motion for a new trial than for a judgment *n.o.v.* *Pedrick*, 37 Ill. 2d at 509-10. New trials should be granted only when

the opposite conclusion is clearly apparent to the reviewing court or the jury's findings are unreasonable, arbitrary and not based on the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508 (1992); *Finley v. New York Central R.R. Co.*, 19 Ill. 2d 428, 434, 167 N.E.2d 212 (1960). Verdicts are set aside and new trials ordered when the verdict of the jury is against the manifest weight of the evidence, meaning a conclusion opposite that reached by trier of fact must be clearly evident, plain, and indisputable. *Pedrick*, 37 Ill. 2d at 509; *In re Estate of Lukas*, 155 Ill. App. 3d 512, 520-21, 508 N.E.2d 368 (1987).

■ On the other hand, judgments *n.o.v.* should be entered only in those cases in which "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based upon that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). A motion for a judgment *n.o.v.* will be granted only if there is a total failure or lack of evidence to prove an essential element of the plaintiff's case. *Merlo v. Public Service Co.*, 381 Ill. 300, 311, 45 N.E.2d 665 (1942). Where the evidence demonstrates a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence may be decisive of the outcome, it is error to enter a judgment *n.o.v. Villa v. Crown Cork & Seal Co.*, 202 Ill. App. 3d 1082, 1087, 560 N.E.2d 969 (1990). Where this court is called upon to review a trial court's denial of a motion for judgment *n.o.v.*, we have no license to substitute our judgment for that of the jury. *Morse v. Johnson*, 81 Ill. App. 3d 552, 555, 401 N.E.2d 654 (1980). The jury's resolution of disputed factual questions can only be set aside where "palpably erroneous" or "wholly unwarranted." *Morse*, 81 Ill. App. 3d at 555.

■ We have carefully reviewed the evidence presented to the jury in this case and cannot say that the jury's findings meet either the standard necessary to order a new trial or that for entering judgment *n.o.v.* As Silliker argues, RMC owed a nondelegable duty of care to Pempek to provide him with a reasonably safe place to work. See *Dickey v. Commonwealth Edison Co.*, 149 Ill. App. 3d 242, 244, 500 N.E.2d 697 (1986); *Coselman v. Schleifer*, 97 Ill. App. 2d 123, 239 N.E.2d 687 (1968). From the facts presented, the jury could have reasonably concluded that the failure of RMC to train Pempek in evaluating the dangers of using the ladder from which he fell or the failure to insist that he use his own equipment or the failure to require him to use the metal ladder that was provided by Silliker was a contributing factor in causing his accident. The jury could have also concluded from the nature of the case that Silliker settled the Pempeks' claims for such injury in reasonable anticipation of legal liability.

## FAULT OF LAWRENCE PEMPEK IN CAUSING HIS OWN INJURIES

RMC also argues that the trial court denied it a fair trial in making several rulings with regard to Lawrence Pempek's alleged contributory negligence. First, RMC claims that the trial court improperly refused to allow it to present testimony to establish that Pempek was responsible for his own injuries. Second, RMC claims the trial court improperly denied it the right to tender to the jury an instruction asking what percentage of fault, if any, was attributable to Pempek's conduct. Third, RMC assigns error to the trial court's refusal to tender to the jury a special interrogatory asking whether Pempek was the sole proximate cause of his injuries.

■ We find the trial court ruled properly on each of these claims. The issue of whether an employee can be held contributorily negligent for his own injury in a third-party suit was recently decided in *Ewanic v. Pepper Construction Co.*, 305 Ill. App. 3d 564, 712 N.E.2d 852 (1999). The court in *Ewanic* determined that an injured worker is properly excluded from a verdict form as a person against whom a jury may properly allocate responsibility in a contribution action where a prior settlement of the principal action has been found made in good faith. This is because contribution is limited by the Contribution Act to those "subject to liability in tort" (740 ILCS 100/2(a) (West 1992)), and an injured worker is not subject to liability to himself when injured on a jobsite. *Ewanic*, 305 Ill. App. 3d at 569. In addition, we note that allowing employers to reduce their liability under the Workers' Compensation Act by establishing their own employee's negligence undermines one of the Act's central purposes, *i.e.*, to relieve workers from the pitfalls that necessarily arise following allegations by an employer of the employee's contributory negligence. *Toothman v. Hardee's Food Systems, Inc.*, 304 Ill. App. 3d 521, 533, 710 N.E.2d 880 (1999). As noted in *Ewanic*, to the extent that contributory negligence exists, it necessarily was a factor considered by the parties in the underlying action. The trial court specifically found Silliker's settlement with Pempek to have been made in good faith and RMC did not object or challenge the good faith or reasonableness of the settlement. See *Mallaney v. Dunaway*, 178 Ill. App. 3d 827, 831-32, 533 N.E.2d 1116 (1988), citing *Hall v. Archer-Daniels-Midland Co.*, 122 Ill. 2d 448, 461, 524 N.E.2d 586 (1988). Accordingly, allowing RMC to receive a deduction in its payment due to Pempek's contributory negligence would provide RMC with an improper windfall.

## FAULT OF THE PIPEFITTER'S UNION

■ RMC also attributes error to the failure of the trial court to

allow it to include the Pipefitter's Union on the verdict form as a contributor to Pempek's accident. Evidence presented by RMC established that Pempek was a member of the Pipefitter's Union and that the union had provided training to Pempek on various safety concerns related to his work. The union also mandated the minimum level of safety equipment RMC was to provide to its members. RMC claimed that the failure of the Pipefitters to properly train or to assure he was properly outfitted with equipment should reduce its liability.

We summarily reject RMC's claim in this regard as RMC neither established that the union had control over Pempek's work site nor cited authority to indicate that the union owed Pempek a legal duty in tort.

## THE TRIAL COURT'S EXCLUSION OF WITNESS RICH NOWAK

■ Prior to trial the court determined that it would prevent Rich Nowak, Pempek's immediate supervisor, from testifying as a sanction against RMC for its failing to disclose Nowak prior to the date discovery was closed. RMC now claims that its inability to present Nowak denied it a fair trial.

In *People v. Andrews*, 146 Ill. 2d 413, 420-21, 588 N.E.2d 1126 (1992), our supreme court stated:

"[T]he key to saving for review an error in the exclusion of evidence is an adequate offer of proof in the trial court. [Citations.] The purpose of an offer of proof is to disclose to the trial judge and opposing counsel the nature of the offered evidence and to enable a reviewing court to determine whether exclusion of the evidence was proper. [Citation.] The failure to make an adequate offer of proof results in a waiver of the issue on appeal."

See also *Holder v. Caselton*, 275 Ill. App. 3d 950, 955, 657 N.E.2d 680, 685 (1995).

Our review of the record fails to indicate that Nowak's proposed testimony was preserved by RMC through a proper offer of proof. That being the case, we decline to review the trial court's refusal to allow Nowak to testify as, were we to find trial error, we would be unable to determine whether such error affected the outcome of the trial. *Leary v. Eng*, 214 Ill. App. 3d 279, 573 N.E.2d 352 (1991) (judgment should not be reversed on the basis of evidentiary rulings unless record indicates existence of substantial prejudice affecting outcome of trial).

## JURISDICTION IN APPEAL No. 1—99—4167

As we have noted, the trial court, prior to the commencement of

the trial on the contribution action, held a "good-faith" hearing on the settlement agreement between Silliker and Pempek. That same day the court ordered that $66,782.60 be put into an escrow account to protect RMC's worker's compensation lien claim against Silliker. The court set this amount based upon preliminary data provided by RMC. RMC made no objection to the amount of money the court ordered Silliker to put into the escrow account.

After the contribution trial and after denying RMC's posttrial motions, RMC filed a notice of appeal on July 9, 1998. While the case was pending in the appellate court, RMC presented a motion to the trial court for a judgment lien in the amount of $2,611.50 to account for an alleged underpayment by Silliker. The date of this motion was August 18, 1998. Although Chubb, Silliker's carrier, paid the $66,782.60 ordered by the court into the escrow account which was created to protect RMC's interests, RMC claimed in the motion that this amount was based on preliminary figures only, and that the additional payment was required to fully satisfy the lien claim.

We agree with Chubb and Silliker that the court had no jurisdiction to consider RMC's August 18, 1998, motion. On that date there was no justiciable question between Chubb and RMC pending, as final judgment in the case had been entered and jurisdiction had vested in the appellate court.

■ RMC claims that the court had jurisdiction over the matter presented in its August 18, 1998, motion pursuant to section 5(b) of the Workers' Compensation Act. That section states as follows:

> "No release or settlement of claim for damages by reason of such injury or death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both the employer and employee or his personal representative, except in the case of the employers, such consent is not required where the employer has been fully indemnified or protected by court order." 820 ILCS 305/5(b) (West 1996.)

In *Galvan v. John Caretti Co.*, 6 Ill. App. 3d 894, 896-97, 287 N.E.2d 90 (1972), this court determined that the circuit court's jurisdiction over an employee's settlement with a third party continues until the court protects an employer's rights to the section 5(b) lien. RMC claims that it did not give its written consent to the settlement between Pempek and Silliker and that it was not "fully protected" by the court's order recognizing the settlement because the amount of money placed in escrow by the court was insufficient to cover the actual amount due to it.

We reject the theory raised by RMC that the court's order finding it was entitled to reimbursement did not "fully protect" its interests.

The same contention was raised and rejected in *Kleeman v. Fragman Construction Co.*, 91 Ill. App. 3d 455, 414 N.E.2d 1064 (1980). In *Kleeman*, the third-party defendant asserted that its lien interest was not sufficiently protected by a court order which stated simply that the third-party plaintiff acknowledged and agreed to pay the lien. *Kleeman*, 91 Ill. App. 3d at 458. Defendant argued that such a protection was " 'no more than a formal gesture in acknowledgment of the rights of the employer' " and, therefore, insufficient to satisfy the requirements of section 5(b). *Kleeman*, 91 Ill. App. 3d at 459. In rejecting this argument, the court stated that the requirement that the employer be fully indemnified for a settlement to be valid is met where the lien is acknowledged in a court-approved settlement. *Kleeman*, 91 Ill. App. 3d at 460. Moreover, the court noted that the defendant had received a setoff and credit in the third-party action. *Kleeman*, 91 Ill. App. 3d at 460. Thus, the trial court's order, and not just the setoff and credit, provided the necessary protection under section 5(b).

In the present case, there were no bases under section 5(b) to invoke the circuit court's jurisdiction on August 18, 1998. This is because the settlement was final and acknowledged RMC's statutory lien. Indeed, Chubb not only acknowledged the lien on January 30, which in and of itself was sufficient to satisfy section 5(b), but RMC also received a setoff and credit in the contribution action, as well as a cash payment of $66,782.60.

We find that the circuit court improperly addressed RMC's August 18 motion in that RMC's posttrial motion was denied on June 9, 1998. The circuit court's jurisdiction over the proceedings, therefore, lapsed 30 days later, on July 9, 1998. Accordingly, we vacate the court's order of October 20, 1998. The court was without jurisdiction on that date to enter it.

For the foregoing reasons, the judgment in appeal No. 1—98—2455 is affirmed. We grant Chubb and Silliker the relief they request in appeal No. 1—98—4167 and vacate the circuit court's order of October 20, 1998.

No. 1—98—2455, Affirmed.
No. 1—98—4167, Reversed; order vacated.

CAMPBELL and QUINN, JJ., concur.